UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ADAM LACROIX, an individual

    Plaintiff,

v.                                       Case No:  2:18-cv-143-FtM-38CM

LEE COUNTY, FLORIDA and
JAMES DRZYMALA,

    Defendants.
_____/

## **OPINION AND ORDER**[1]

This matter comes before the Court on Plaintiff Adam Lacroix's ("Lacroix") Motion for Preliminary Injunction (Doc. 7) filed on March 16, 2018. Defendants James Dryzmala ("Officer Dryzmala") and Lee County, Florida ("Lee County") responded on June 19, 2018, and June 20, 2018. (Docs. 36, 37, 38). Consequently, the matter is ripe for review.

## **BACKGROUND**

Lacroix is an itinerant street preacher. (Doc. 1 at ¶ 33). He believes he has a mandate to "exercise his rights to freedom of speech and to further his religious, political, and social beliefs" in Lee County. (Doc. 1 ¶¶ 13, 41). He attempts to satisfy this mandate by discussing his faith with others, referring to "[b]iblical principles mentioning sexual

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

immorality," distributing free literature and carrying portable signs. (Doc. 1 at ¶¶ 37, 40). He also wields a bullhorn to spread his religious message.[2]

This case stems from Lacroix's attempt to preach at a sports complex in Lee County, Florida known as JetBlue Park (the "JetBlue Property"). (Doc. 1 at ¶ 64). The JetBlue Property consists of parcels owned by Lee County and NESV Florida Real Estate LLC. (Doc. 36-1). Lee County exclusively leases its portions of the JetBlue Property to the Boston Red Sox Baseball Club, Limited Partnership (the "Red Sox") on a year-round basis for use as a spring training facility and for other non-baseball activities. (Docs. 36-2 at 5-7; 38-2 at ¶ 4).

The JetBlue Property lies behind two entrances that sit north of a west-east thoroughfare. (Doc. 36-1). A street called Fenway South Drive runs in a semi-circle through the JetBlue Property with two outlets onto the external thoroughfare. (Doc. 36-1). At the west end of Fenway South Drive, a road called Power Alley branches off further westward toward parking spaces. (Doc. 36-1).



(Doc. 36-1).

---

[2] Preacher PUNCHED!!! & Political Protesters PERSECUTE!!!, YOUTUBE (Aug. 11, 2016) https://www.youtube.com/watch?v=OHJJxZ4RINQ.

On April 29, 2017, the Red Sox and NESV Florida Real Estate LLC allowed a private company to use the JetBlue Property for a music concert known as Fort Rock. (Docs. 1 at ¶ 64;1-8 at 9). The concert was permitted under Lee County's Special Events Permitting Ordinance (the "Ordinance"). (Doc. 1 at ¶ 65). The concert organizer requested the Lee County Sheriff's Office ("LCSO") only allow concert patrons to enter the JetBlue Property. (Doc. 36-4 at ¶ 7).

Enter Lacroix. On that date, he attempted to preach on the JetBlue Property near the intersection of Fenway South Drive and Power Alley. (Doc. 1 at ¶¶ 64, 66-67). After he began, Officer Dryzmala approached and summoned a concert organizer, who demanded Lacroix leave. (Doc. 1 at ¶¶ 82, 86-88). Officer Dryzmala then directed Lacroix to move outside of the JetBlue Property. (Doc. 1 at ¶¶ 97). When Lacroix protested, Officer Dryzmala informed him that further non-compliance would result in an arrest for trespass. (Doc. 1 at ¶ 99). Lacroix does not specify whether he complied with Officer Dryzmala's directive or if he faced reprisal for trespass.[3]

Almost a year after the event, Lacroix filed a fourteen-count Complaint against Lee County and Officer Dryzmala. (Doc. 1). It alleges Lee County's Trespass Policy for county-owned property (the "Trespass Policy"), and the Ordinance are unconstitutional both facially and as-applied.[4] Now, Lacroix moves for a preliminary injunction.

---

[3] Lacroix's counsel provides a YouTube link he alleges depicts "the events giving rise to this lawsuit." (Doc. 39 at 2). The link, however, is dated April 30, 2016 – a year before the events at the heart of this lawsuit. [T]hreatening, YOUTUBE (April 30, 2016), https://www.youtube.com/watch?v=ckJxIpPILKM&feature=youtu.be. Thus, it cannot depict the incident at issue here.

[4] The Complaint also alleges Lee County failed to train and supervise its officers about constitutionally enforcing the Ordinance. (Doc. 1 at ¶¶ 153-54, 167-68). Without any supporting facts, it states that this failure led to a pattern of unconstitutional interpretation

## LEGAL STANDARD

It is an "unremarkable observation that a preliminary injunction in advance of trial is an extraordinary remedy." *Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011). A meritorious application for a preliminary injunction must show: (1) a substantial likelihood of success on the merits; (2) an irreparable injury that will be suffered unless the injunction issues; (3) the movant's threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Id.*

## DISCUSSION

Lacroix argues the Trespass Policy and the Ordinance are unconstitutional facially and as-applied. He contends that the purported unconstitutionality of both provisions merits a preliminary injunction. Defendants disagree. The Court, however, need not reach those arguments because Lacroix lacks standing for injunctive relief.

Article III of the United States Constitution limits the Court's jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. "One element of the case-or-controversy requirement is that [a plaintiff], based on their complaint, must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). Standing is "a fact-specific inquiry." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 606 (1992). To establish standing, a Complaint must allege

> (1) the plaintiff . . . suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or

---

and enforcement that Lee County condoned and ratified. (Doc. 1 at ¶¶ 154-55, 168-69). Functionally, these claims rest on the same grounds as Lacroix's Ordinance-related as-applied claims against Lee County. Thus, they will be interpreted co-extensively for the purposes of this Order.

> hypothetical; (2) there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Bloedorn*, 631 F.3d at 1228.

**A.    Injury in Fact**

For the purposes of injunctive relief, "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S. Ct. 1660, 1665, 75 L. Ed. 2d 675 (1983). Thus, "[a] plaintiff has standing to seek declaratory or injunctive relief only when he alleges facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1340 (11th Cir. 2000). This "requires only that the anticipated injury occur within some fixed period of time in the future." *Bloedorn*, 631 F.3d at 1228 (internal quotations omitted). "[A] plaintiff need not expose himself to enforcement of a law to challenge it in the First Amendment context; instead, an actual injury can exist when the plaintiff is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences." *Id.* That said, "'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the actual or imminent injury." *Lujan*, 504 U.S. at 564.

Against that backdrop, the Complaint alleges Lacroix attempted to engage in religious speech on the date of the incident. (Doc. 1 at 74-80). There can be no doubt

this was constitutionally protected speech. See *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981) ("[O]ral and written dissemination of . . . religious views and doctrines is protected by the First Amendment"). And because the JetBlue Property is publicly owned, Lacroix's inability to engage in such speech was an invasion of a legally protected interest. See *Bloedorn*, 631 F. 3d at 1228. But the Complaint does not include facts sufficient to indicate there is a substantial likelihood the Trespass Policy or the Ordinance (the "Laws") will injure Lacroix in the future.

*1. Trespass Policy Claims*

First, Lacroix mounts a facial challenge against the Trespass Policy. A facial challenge "seeks to invalidate a statute or regulation." *United States v. Frandsen*, 212 F.3d 1231, 1235 (11th Cir. 2000). Lacroix alleges the Trespass Policy is unconstitutional because it is a content-based regulation that facially restricts his first amendment rights to free speech and free exercise of religion. (Doc. 1 at ¶¶ 139, 146). In addition, Lacroix states that from "January 2018 through December 2021" he plans to "peacefully [express] religious, political, and social speech within [public parks, public streets, public sidewalks, and public rights of way within the jurisdiction of the County]." (Doc. 1 at ¶¶ 16, 42). He also states he "wishes to continue exercising his constitutional rights, and has specific and concrete intentions to continue engaging in . . . activities prohibited by the [Trespass] Policy." (Doc. 1 at ¶ 121). These allegations are not enough to satisfy the injury in fact threshold. Lacroix does not specifically state why the Trespass Policy is a content-based regulation or why it would specifically restrict prospective exercise of first amendment rights. Nor does he provide the expected times, topics, locations, or surrounding context

for his prospective first amendment exercise.[5]  Each of these details are integral to the overall circumstantial matrix from which it can be discerned he faces a substantial likelihood of future injury.  See *Elend v. Basham*, 471 F.3d 1199, 1209 (11th Cir. 2006) (finding standing lacking where plaintiffs did not concretely allege "when, where, or how . . . a protest might occur.").  Because Lacroix fails to supply those details, he does not allege a cognizable injury in fact for injunctive relief.

Second, Lacroix alleges the Trespass Policy facially imposes a burden on his constitutional rights because it "allows for the exercise of unbridled discretion." (Doc. 1 at ¶¶ 143(a), 150(a)).  But that single conclusory allegation is as far as he goes.  Where, as here, a plaintiff alleges a statute grants unbridled discretion, she must show she is or may be "subject to" the provision to establish a constitutional injury.  *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1275 (11th Cir. 2006).  For the same reasons outlined above, Lacroix fails to allege he will be "subject to" the Trespass Policy in the future.  Absent more, the Court cannot find an injury in fact for injunctive relief.

Third, Lacroix alleges the Trespass Policy is facially unconstitutional because it places the burden on the recipient of a trespass warning to prove the warning was improvidently issued, because it bans trespass warning recipients from public property for certain periods of time, and because it lacks narrow tailoring, fails to achieve any legitimate government purpose, and fails to leave open alternative avenues for

---

[5] At oral argument, his counsel contended Lacroix may face retribution for sexual speech. But the necessary factual predicate for a standing determination "may not be gleaned from the briefs and arguments." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 235, 110 S. Ct. 596, 610, 107 L. Ed. 2d 603 (1990), holding modified on other grounds by *City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774, 124 S. Ct. 2219, 159 L. Ed. 2d 84 (2004).  That substantive information will therefore be excluded from consideration.

expression. (Doc. 1 at ¶¶ 140-143, 147-150). But like he did with the unbridled discretion claim, Lacroix fails to supply even a sliver of meat to the bones of his allegations. It is thus wholly unclear how any of the challenged portions of the Trespass Policy would cause him injury in the future. As such, they cannot be injuries in fact for injunctive relief.

Fourth, Lacroix alleges Lee County and Officer Dryzmala applied the Trespass Policy in such a manner as to burden Lacroix's free speech and free exercise of religion rights, and that the application will recur in the future. (Doc. 1 at ¶ 201, 211, 223, 238). Unlike facial claims, which challenge laws as written, as-applied claims challenge a law's application. *See Jacobs v. The Fla. Bar*, 50 F.3d 901, 906 (11th Cir. 1995). But Lacroix fails to allege any specific reason that either Lee County or Officer Dryzmala will apply the Trespass Policy to him in the future and thereby burden his first amendment rights.

From a fundamental perspective, Lee County cannot and will not apply the Trespass Policy to Lacroix. It is a political subdivision created by the Florida Constitution. Fla. Const. art. VIII, § 1(a). As a political subdivision, Lee County may legislate within the boundaries of the Florida Constitution. *See id.* at § 1(g). But Lee County does not *apply* its laws. *See* Fla Stat. § 30.15. Instead, in Florida, an elected sheriff is a county officer, entitled to "raise the power of the county." Fla. Const. art. VIII, § 1 (d); Fla Stat. § 30.15. The County and the sheriff are separate constitutional entities. *See* Fla. Const. art. VIII, §§ 1(a), (d). Still, under 42 U.S.C. § 1983, a county may be held responsible where an injury arises from the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).

Lacroix alleges Lee County trains LCSO officers – like Officer Dryzmala – to interpret and apply the Trespass Policy. (Doc. 1 at ¶ 104). He also states that "[a]s interpreted and enforced by the Defendants, [his] manner of expressing his constitutional rights is prohibited by the Policy . . . ." (Doc. 1 at ¶ 116). But Lacroix does not state *how* Lee County's interpretation of the Trespass Policy prohibits his free speech or free exercise of religion. Absent more, the only logical reading of the plain text is that Lee County interprets the Trespass Policy to bar *all* of Lacroix's speech and exercise of religion. But the applicable facts undermine that allegation. On the date of the incident, Officer Dryzmala directed Lacroix to continue his speech outside of the JetBlue Property. (Doc. 1 at ¶ 99). Because the Complaint does not allege he was threatened with trespassing there, such a broad interpretation cannot be inferred. Consequently, he has not shown a substantial likelihood of future injury for standing purposes.

Lacroix's argument that he will be injured by Officer Dryzmala's prospective application of the Trespass Policy is also untenable. Officer Dryzmala is an LCSO Lieutenant. (Doc. 36-4 at ¶ 3). His specific duties are to oversee major events occurring throughout Lee County as a watch commander for the patrol bureau. (Doc. 36-4 at ¶ 3). He does not focus on enforcement of the Trespass Policy. (Doc. 36-4 at ¶ 11). For the purposes of injunctive relief, Lacroix's argument is premised on the tenuous position that the trespass policy *might* be enforced against him again at an undescribed time and place in the future, for undescribed reasons, and that at that time, Officer Dryzmala *might* be the LCSO officer interpreting and enforcing the law. That is a bridge too far. Even overlooking the lack of factual detail that the court has already found to doom standing with regard to facial claims, Lacroix supplies no detail as to why Officer Dryzmala would

enforce the Trespass Policy as opposed to any other LCSO officer. Article III requires more for the purposes of injunctive relief.[6]

### 2. The Ordinance

Lacroix's Ordinance-based claims also fail to allege an injury in fact. First, Lacroix claims the Ordinance facially restricts his first amendment rights to free speech and free exercise of religion during permitted events. (Doc. 1 at ¶¶ 181, 191). But that claim lacks sufficient detail to confer standing for injunctive relief because he does not specifically allege an intention to return in the future to forums hosting permitted events. Absent such a return, even assuming Lacroix's allegations are true, his rights could not be impacted by the Ordinance. As such, he cannot show an injury for the purposes of injunctive relief.

Second, Lacroix alleges the Ordinance facially "allows for the exercise of unbridled discretion." (Doc. 1 at ¶¶ 183(a), 193(a)). But like his unbridled discretion claims regarding the Trespass Policy, he includes no other supporting facts. That alone would be enough to find standing lacking for the purposes of injunctive relief. But this claim fails for a more fundamental reason. Unbridled discretion claims require showing the challenged provision has "a close enough nexus to expression, or to conduct commonly associated with expression, to pose a real and substantial threat of the identified censorship risks." *CAMP Legal Def. Fund, Inc.*, 451 F.3d at 1274. Lacroix also fails to

---

[6] Lacroix also brings an *as-applied* claim against Lee County and Officer Dryzmala based on the Trespass Policy's purported allowance of unbridled discretion. Plainly, though, unbridled discretion claims attack on the text of the policy rather than its individual enforcement. *Granite State Outdoor Advert., Inc. v. Cobb Cty., GA*, 193 F. App'x 900, 905 (11th Cir. 2006) ("The Supreme Court has 'long held that when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially . . . ."). As such, those claims are also insufficient to provide standing.

10

meet this threshold. The Complaint does not allege Lacroix's future speech will be restricted if he does not apply for a permit under the Ordinance, that he intends to apply for a permit under the Ordinance, or even that he intends to return to forums hosting permitted events to engage in protected speech. Without those details, he cannot allege a cognizable injury in fact.

Third, Lacroix alleges the Ordinance is facially unconstitutional because it lacks narrow tailoring, fails to achieve any legitimate government purpose, and fails to leave open alternative avenues for expression. But for the same reasons these claims failed with respect to the Trespass Policy, they fail here. Lacroix's standing depends on the likelihood he will be harmed by each provision. That said, any prospective injury is bootstrapped to Lacroix's inability to exercise his first amendment rights due to the Ordinance. The Court has already found those claims insufficient to allege a substantial likelihood of future injury. It will not change course here.

Fourth, Lacroix alleges Lee County and Officer Dryzmala applied the Ordinance in such a manner as to burden his constitutional rights and that the application will occur in the future. (Doc. 1 at ¶ 251, 261, 273, 288). But Lacroix's as-applied Ordinance claims against Lee County fail for the same reason as his Trespass Policy claims – because he has not attempted to allege *how* Lee County directs LCSO officers to interpret the Ordinance such that it will injure Lacroix in the future. Lacroix's claims against Dryzmala also fail because there is no indication Lacroix will encounter him in the future.[7]

---

[7] Lacroix also brings an *as-applied* claim against Lee County and Officer Dryzmala based on the Ordinance's purported allowance of unbridled discretion. (Doc. 1 at ¶¶ 254(a), 264(a), 278(a), 293(a)). As the Court has already found in regard to the Trespass Policy, this claim is only applicable to facial challenges.

11

**B. Redressability**

In addition to failing to allege a cognizable injury in fact stemming from Officer Dryzmala's enforcement of the Laws, Lacroix also fails to demonstrate his purported injuries would be redressed by enjoining Officer Dryzmala's enforcement of the Laws. Again, to establish standing, a plaintiff must allege it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Bloedorn*, 631 F.3d at 1228. Thus, to have standing against Officer Dryzmala, the remedy Lacroix seeks must be able to redress his injury – the purported infringement of his first amendment rights. Enjoinment will not do so here. As an LCSO Lieutenant, Officer Dryzmala has no ability to interpret the law or mandate how his fellow officers enforce the law. (Doc. 36-4 at ¶¶ 3-4). This ineluctably means that even if Officer Dryzmala were enjoined from enforcing the Laws, that act alone would not change the practices of his fellow LCSO officers. Thus, enjoining Officer Dryzmala falls short of redressing Lacroix's injuries.

**C. Immediacy**

Finally, it bears noting that Lacroix filed his Complaint almost a year after the incidents giving rise to this suit occurred. (Doc. 1). That is problematic because to merit a preliminary injunction, a party's irreparable injury "must be neither remote nor speculative, but actual and imminent." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). The Eleventh Circuit has found that "the very idea of a preliminary injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016). Thus, "[a] delay in seeking a preliminary injunction of even only a

few months—though not necessarily fatal—militates against a finding of irreparable harm." *Id.*

Here, Lacroix fails to offer a single reason for the near twelve-month gap between the date of the incident and the filing of his Complaint. Nor has the Court independently discerned one. The Eleventh Circuit has found that a gap of less than half the amount of time elapsed here is enough to undermine a preliminary injunction argument. *Id.* at 1249. The Court will follow suit. Even if Lacroix had standing, his delay indicates he does not face imminent irreparable harm.

Accordingly, it is now

**ORDERED:**

Plaintiff Adam Lacroix's Motion for Preliminary Injunction (Doc. 7) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida this 23rd day of July, 2018.

*[Signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record